In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-1158

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIAM J. DAVISON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:02-CR-00044 — **James T. Moody**, *Judge.*

SUBMITTED JULY 17, 2014 — DECIDED JULY 30, 2014

Before POSNER, KANNE, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant, a member of the
"Concord Affiliated" street gang in Gary, Indiana, was con-
victed in 2003 of two counts of having distributed at least 50
grams of crack cocaine. 21 U.S.C. § 841(a)(1). In October
2003, the district judge, determining that the defendant had
foreseen the gang's sale of "way in excess of" 1.5 kilograms
of crack—at that time the threshold quantity for the highest
base offense level (38) for a federal drug offense—sentenced

him to 360 months in prison. Actually the jury had acquitted him of conspiracy. But at the sentencing hearing, the judge, as he was authorized to do, see *United States v. Watts*, 519 U.S. 148, 149 (1997) (per curiam), determined by a preponderance of the evidence that the defendant had been a member of the conspiracy. The judge reasoned from this determination that the sales of crack by the other members, to the extent that those sales had been reasonably foreseeable to the defendant, constituted "relevant conduct" engaged in by him and were therefore the correct basis for calculating his guidelines sentencing range. The quantity of those foreseeable sales made his base offense level 38. His total offense level was 40, for which the guidelines sentencing range is 292 to 365 months, so the 360-month sentence was within that range. (The government's brief incorrectly states that the defendant was sentenced to life imprisonment.) He appealed, and we affirmed his sentence in *United States v. Davison*, 166 F. App'x 246, 249 (7th Cir. 2005).

After an initial failure to obtain a sentencing reduction, see *United States v. Davis*, 682 F.3d 596, 619–20 (7th Cir. 2012), the defendant moved for a sentencing reduction under 18 U.S.C. § 3582(c)(2) on the basis of the Sentencing Commission's having retroactively lowered the base offense level for offenses involving crack. U.S.S.G. App. C, Amendment 750 (2011); *United States v. Dixon*, 687 F.3d 356, 358 (7th Cir. 2012). He conceded responsibility for the sale of 4.5 kilograms of crack but argued that he was not responsible for 8.4 kilograms, the new floor created by the Sentencing Commission's retroactive change in the amount of crack required to make a defendant's maximum base offense level 38. The district judge denied the motion, ruling that the defendant had been responsible for the sale of at least 16.9 kilograms of

crack. That was the entire amount that the conspiracy of which the defendant was a member had been found to have sold, and we had upheld that finding in *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010), a case that involved a motion for a reduction in sentence by two of the current defendant's co-conspirators.

Both the district judge in denying the defendant's motion for a reduction in the length of his sentence, and the government in defending that denial in this court, appear, however, to have misunderstood "relevant conduct," the basis on which the judge had computed a base offense level of 38 for the defendant and sentenced him to 360 months in prison. Relevant conduct is conduct by the defendant that even if not charged is to be used to determine his base offense level, U.S.S.G. § 1B1.3 and Application Note 1. It consists, "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction … ." § 1B1.3(a)(1)(B). Application Note 1 explains that the "principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability. Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or *conspirator*"(emphasis added).

The focus in other words is on acts, reasonably foreseeable to the defendant even though committed by others, that furthered a criminal activity that he had agreed to undertake jointly with those others. *United States v. Soto-Piedra*, 525 F.3d 527, 531–33 (7th Cir. 2008); *United States v. McDuffy*, 90 F.3d 233, 236 (7th Cir. 1996); *United States v. Edwards*, 945 F.2d 1387, 1395 (7th Cir. 1991); *United States v. Spotted Elk*, 548 F.3d 641, 673–74 (8th Cir. 2008); U.S.S.G. § 1B1.3, Application Note 2, Illustrations (c)(1), (6), (7). So whether the defendant in this case is liable for the sale of illegal drugs by other members of the conspiracy that he had joined, in an amount in excess of the limit (8.4 kilograms) for the sentence reduction that he seeks, depends not only on whether the sale quantity was foreseeable to him (which the judge found that it was), but also on whether he joined with those other conspirators in a joint undertaking of which the making of those sales was an objective, or had agreed to join in such an undertaking. And that is a question that neither the district judge nor the government addressed.

In effect the judge and the government equated "jointly undertaken criminal activity" to conspiracy, and that is incorrect. "Conspiracy liability, as defined in *Pinkerton v. United States*, 328 U.S. 640, 646–48 (1946), is generally much broader than jointly undertaken criminal activity under § 1B1.3." *United States v. Soto-Piedra*, *supra*, 525 F.3d at 531. By agreeing with others to sell crack the defendant joined a conspiracy. And he *may* have agreed to help his co-conspirators achieve a goal of selling an amount of crack that would exceed 8.4 kilograms, and if so the sales of that amount (in excess of the amount he sold personally, which was the basis of his offense of conviction) would be relevant conduct of his because they would be the fruit of a criminal

activity that he had jointly undertaken with his co-conspirators. But in determining the defendant's relevant conduct the district judge did not rely on evidence that the defendant had agreed to help his co-conspirators sell crack; nor does the government in its brief rely on such evidence. The government and the district judge stop with foreseeability, and that's not enough.

As noted earlier, the defendant admits responsibility for selling more than 4.5 kilograms of crack himself. It appears that his average sales were 3.5 grams a day, which over four years would amount to 5.1 kilograms—much less than 8.4 kilograms. Suppose he had joined the conspiracy knowing of its objectives, but his only goal was to have a better shot at obtaining crack that he could resell. If he neither did nor agreed to do anything to promote sales by the other gang members, their sales (which together with his sales exceeded the 8.4 kilogram limit for a sentence reduction) were not relevant conduct of his, even if foreseeable.

The record does, however, contain evidence that the defendant had done more than just sell his own crack—maybe enough more to establish that the entire sales of the conspiracy, or at least some amount in excess of 8.4 kilograms, were relevant conduct of his, in which event he wouldn't be eligible for a sentence reduction. The judge remarked that in sentencing the defendant back in 2003 he had "also found [that] … 'more likely than not, he [Davison] was a shooter,' that is, he had been involved, as either an accomplice or the actual triggerman, *in murders carried out in furtherance of the conspiracy*" during his three years of membership in the Concord Affiliated gang (emphasis added). (Only the passage in single quotation marks is a quotation from the judge's remarks

when he sentenced the defendant in 2003) If those murders were indeed intended to assist the sales activity of other gang members, the sales made by those other members would be illegal activity undertaken by our defendant jointly with those others. But it is uncertain whether that is what the judge meant. He may just have meant that the murders were intended to further the defendant's own sales. It is noteworthy that nowhere in his opinion denying the sentence reduction does the judge treat the murders as relevant conduct; rather he treats the gang's entire sales during the period of the defendant's membership as relevant conduct because reasonably foreseeable to the defendant.

The possible significance of the murders to the question of the defendant's relevant conduct thus remains an unresolved issue. It is a factual issue for the district judge to resolve in the first instance, as are any other factual issues regarding the defendant's relevant conduct.

We reverse the judgment and remand the case for reconsideration of the defendant's motion.

REVERSED AND REMANDED.